# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 50256 | **DATE** | 9/29/2010 |
| **CASE TITLE** | Roberto Cantu, et al. vs. Ken Nelson Auto Mall, Inc., et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, plaintiffs' motions to remand for lack of subject matter jurisdiction and for an award of attorneys' fees for improper removal are denied. Nelson's motion to sever the claims against it and remand to state court is granted. Counts I, II, III, and IV are severed and remanded to the Circuit Court for the 14th Judicial Circuit, Whiteside County, Illinois.

*Philip G. Reinhard*

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT - OPINION

Plaintiffs, Robert and Omega Cantu, citizens of Illinois, brought this action in Illinois state court against defendant, Ken Nelson Auto Mall, Inc. ("Nelson"), an Illinois corporation with its principal place of business in Illinois, alleging breach of implied warranty of merchantability in violation of section 2310(d) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d) ("Magnuson-Moss"), (Count I), breach of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Count II), common law fraud (Count III), and revocation of acceptance under Magnuson-Moss and the Illinois Uniform Commercial Code, 810 ILCS 5/2-608 (Count IV). Plaintiffs also make claims against First Automotive Service Corporation, a New Mexico corporation with its principal place of business in New Mexico ("First"), for breach of contract (Count V) and as representatives of a putative class of Illinois citizens for consumer fraud (Count VI). First removed to this court under the jurisdictional provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b). Plaintiffs move to remand for lack of subject matter jurisdiction. Nelson moves to sever the claims against it from the claims against First and to remand those claims to state court as outside the subject matter jurisdiction conferred by CAFA.

First removed this action under 28 U.S.C. § 1453(b) which provides "[a] class action may be removed to a district court of the United States in accordance with section 1446 . . . , without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." "[A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). First premises federal subject matter jurisdiction on 28 U.S.C. § 1332(d)(2) which provides federal courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." The jurisdiction provided by 28 U.S.C. § 1332(d) does not extend to a class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). "[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). As the proponent of jurisdiction, First

## STATEMENT - OPINION

bears the burden of establishing federal subject matter jurisdiction. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447 (7th Cir. 2005). A removing defendant "must show a reasonable probability that the stakes exceed the minimum." Id. at 449. "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." Spivey v. Vertrue, Inc., 528 F.3d 982, 986 (7th Cir. 2008) (citation omitted). "A removing defendant need not confess liability in order to show the controversy exceeds the threshold," id. (internal quotation marks and citation omitted), the issue is what amount is in controversy." Id. at 985.

The class claim (Count VI) alleges First violated the Illinois Consumer Fraud Act ("ICFA") as to class members (who are Illinois residents) who bought service contracts from First and were denied coverage for reasons other than those listed in sub-sections (1) through (18) of the "WHAT IS NOT COVERED" section of the service contract. Plaintiffs allege that "most or all class members have damages of less than $1,000 or $2,000," Compl. ¶ 99 (though they allege First decided to deny coverage to plaintiffs, themselves, when First realized plaintiffs' repairs would exceed $2,000.00 Id. ¶ 104.) Plaintiffs allege that First has a pattern and practice of giving non-contractual, pretextual reasons for persons who purchased its contracts in order to deny them coverage and make more money." Compl. ¶ 97.

First has produced data from its business records (Exh. B to First's brief in opposition, which is a printout produced for, and identified in, the deposition of First's corporate representative Vicki Winiger and accepted by the court as evidence of denied claims for purposes of the pending motion) indicating the amount of denied claims for Illinois residents for the period 1/1/2006 through 12/31/2009 are approximately $5.5 million. This data covers a four-year period. The complaint alleges the class consists of Illinois residents who bought service contracts from First "within the last three years." Compl. ¶ 94. Plaintiffs do not dispute the validity of this data based on the four-year versus three-year discrepancy, but instead challenge it because they maintain only claims denied for pretextual reasons should be counted and First denies it denied any claims for pretextual reasons. By plaintiffs' reasoning, no amount is in controversy because First denies liability. However, First is not required to confess liability to show the $5 million threshold is met. Spivey, 528 F.3d at 986. Taking the offered data and averaging it over four years yields an annual average for denied claims of $1,375,000 and $4,125,000 for a three-year period. While this amount would be insufficient in itself to meet the $5 million jurisdictional amount, plaintiffs also seek punitive damages (albeit, in a footnote, which is discouraged as a way to raise an argument.)

"[W]here punitive damages are relied upon to satisfy the amount in controversy requirement, the court must first determine whether punitive damages are recoverable under state law." LM Ins. Corp. v. Spaulding Enterprises Inc., 533 F.3d 542, 551 (7th Cir. 2008). "If punitive damages are available, subject matter jurisdiction exists unless it is 'legally certain' that the plaintiff will be unable to recover the requisite jurisdictional amount." Id. Punitive damages are allowable under ICFA. See 815 ILCS 505/10a(a). They may be awarded "for conduct that is outrageous, either because defendant's motive was evil or the acts showed a reckless disregard of others' rights. Kirkpatrick v. Strosberg, 894 N.E.2d 781, 794 (Ill. App. 2008). Here, plaintiffs allege First has a pattern and practice of giving pretextual reasons to deny coverage. A pretextual reason is a false reason given to cover the real reason – in other words, a lie. Such a pattern and practice, if proven, could certainly result in a substantial award of punitive damages. Plaintiffs do not present any argument in response to First's argument, raised in the footnote, that the punitive damages claim can be considered to meet the jurisdictional threshold. Given the number and amount of claims denied by First plus the potential for punitive damages, First has met its burden to show a reasonable probability that the $5 million threshold has been met. Plaintiffs have not shown it is legally certain they will be unable to recover the jurisdictional amount. LM Ins. Corp., 533 F.3d at 551.

Plaintiffs argue the court is either required (under 28 U.S.C. § 1332 (d) (4)) or should exercise its discretion (under 28 U.S.C. § 1332 (d) (3)) to decline to exercise jurisdiction over this case. However, neither of those provisions applies because First (the only defendant at whom class claims are directed) is not a citizen of the state in which the action was commenced (Illinois). Being a citizen of the state in which the action was commenced is a prerequisite to declining jurisdiction under 28 U.S.C. § 1332 (d) (3) and (4).

Plaintiffs' motion to remand is denied. Plaintiffs' motion for attorneys fees for improper removal is also denied as removal was proper.

Nelson, the other defendant, separately moves, pursuant to Fed. R. Civ. P. 21, to sever the claims against it from the claims against First and to remand those claims to state court as outside the subject matter jurisdiction

conferred by CAFA. The claims against Nelson are claims of the named plaintiffs only. The class claims (Count VI) are only made against First. Plaintiffs have not opposed Nelson's motion to sever and remand. First opposes it.

Rule 21 allows the court to "sever any claim against a party." "[A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are 'discrete and separate.'" Gaffney v. Riverboat Services of Indiana, 451 F.3d 424, 442 (7th Cir. 2006). "[O]ne claim must be capable of resolution despite the outcome of the other claim." Id. The court generally must consider "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." In re High Fructose Corn Syrup Antitrust Litigation, 293 F. Supp. 2d 854, 862 (C. D. Ill. 2003) (Mihm, J.).

The claims plaintiffs bring against Nelson arise from Nelson's sale of a 2001 Dodge Ram to plaintiffs. Plaintiffs purchased an extended warranty service contract covering that vehicle from First. Plaintiffs' claims against Nelson are for breach of the implied warranty of merchantability in violation of 15 U.S.C. § 2310(d) (Magnuson-Moss) because the vehicle was defective and unmerchantable; violation of ICFA (and common law fraud and fraudulent concealment) by concealing the material fact that the vehicle had been in a prior accident and had previously had a salvage title; and refusal to accept plaintiffs' revocation of acceptance of the vehicle. The claims against First are for failure to honor a separate extended warranty contract purchased by plaintiffs' and by a class of other purchasers of extended warranties.

While the vehicle purchased by plaintiffs from Nelson is the same vehicle that is the subject of the extended warranty purchased from First, the claims are substantially different. Nelson is alleged to have made misrepresentations concerning the vehicle and breached its duties concerning implied warranties and acceptance of revocation of the vehicle sales contract. These claims are distinct from the claims against First for refusing to honor the extended warranty contract. Under these circumstances, the fact the purchase of the extended warranty occurred as part of the transaction buying the vehicle (Compl. ¶ 9) and that some of the facts relating to this transaction will be common to claims against each defendant do not carry much weight in deciding the severance issue. The other factors favor severance.

Severance will serve judicial economy as the case against Nelson will be able to proceed more expeditiously to resolution. That case will not be subject to the delays inherent in a class action where class certification itself is time consuming and either settlement or trial is more complicated than the non-class case. For similar reasons, prejudice to Nelson will be avoided by severance as it can get a quicker resolution of the claims against it and avoid the costs in time and attorneys' fees that are necessarily incurred in being a litigant in a class action case. The witnesses and documentary proof of the claims against First will differ from those in the claims against Nelson. The evidence in the claims against First will concern First's practices in denying claims under the extended warranty. The case against Nelson will require evidence of Nelson's dealings with the named plaintiffs – mostly in the pre-sale period. Weighing all of the factors, severance is appropriate. The claims against Nelson are resolvable without regard to the resolution of the claims against First, see Gaffney, 451 F.3d at 442, and their resolution will be more easily reached if severed from the claims against First.

Having severed the claims against Nelson, remand of these claims is appropriate. Nelson asks for remand. Plaintiffs have not opposed it. Nelson and plaintiffs are all citizens of Illinois. While this action was properly removed under 28 U.S.C. § 1441, with jurisdiction provided by CAFA, after severance of these claims from the class action claim, the court declines to exercise supplemental jurisdiction over the claims against Nelson pursuant to 28 U.S.C.§ 1367 (c) (3) as the court does not have original jurisdiction over any claims pending in the severed matters.

For the foregoing reasons, plaintiffs' motions to remand for lack of subject matter jurisdiction and for an award of attorneys' fees for improper removal are denied. Nelson's motion to sever the claims against it and remand to state court is granted. Counts I, II, III, and IV are severed and remanded to the Circuit Court for the 14th Judicial Circuit, Whiteside County, Illinois.